U. S. DISTRICT COURT
Southern District of Ga.
Filed In Office

May 1 20 0?

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| D.L. LEE & SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CV507-30 |
| | ) | |
| TIPPER TIE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Before the Court is Tipper Tie, Inc.'s Motion for Summary Judgment. (Doc. 16.) For the reasons that follow, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND[1]

This is an action for breach of warranty and negligent failure to warn regarding "Tipper Clippers" manufactured and sold by Defendant Tipper Tie and used by Plaintiff D.L. Lee & Sons. D.L. Lee & Sons, located in Alma, Georgia, is a large processor of smoked hams and other meats. In April 2005, the Tipper Clippers purchased by D.L. Lee & Sons

---

[1] On a motion for summary judgment, the Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

malfunctioned, creating metal shavings that contaminated approximately 193,000 pounds of meat.[2]

A Tipper Clipper is a machine used to fasten netting around uncooked pieces of meat prior to the smoking process. After the meat is placed in a roll of netting, the Tipper Clipper, "much like an office stapler," forces two aluminum clips around the netting and squeezes it shut. (Pl.'s Br. at 2.) The "punch" pushes the "clip" down a channel within the "die support" and onto the "die." The die, which has a function similar to the strike plate on an office stapler, forces the clip closed around the netting. After a piece of meat is sealed within its own netting, it proceeds through the smoking process. Afterward, the netting and clips are removed and discarded and the meat is repackaged for sale. (Pl.'s Br. at 2-3.)

D.L. Lee & Sons has been using Tipper Clippers for many years. Tipper Tie sells both Tipper Clippers and clips, which D.L. Lee & Sons uses by the millions. In 2000, Tipper Tie offered to sell new Tipper Clippers, Model

---

[2] After the metal flakes were discovered, the production lines were shut down and the problem was traced back to the Tipper Clippers. Plaintiff attempted to salvage the product, but was unable to do so. The United States Department of Agriculture was contacted and updated about the situation. Plaintiff states that there was no evidence that any contaminated product left the facility. (Pl.'s Br. at 5.)

Z3200, to D.L. Lee & Sons at a discounted rate so that Tipper Tie could make their product line more uniform. D.L. Lee & Sons purchased four new Tipper Clippers in May and July of 2000 and replaced its older model Tipper Clippers with these new machines. The Complaint alleges that Tipper Tie created an express warranty at the time of sale by representing that "this equipment was fully capable of meeting Lee's clipping needs and that they would work as good or better than the Tipper Clippers which Lee had purchased in the past." (Compl. ¶ 31; Lee Aff. ¶ 5.)

Also at the time of sale, Tipper Tie provided D.L. Lee & Sons with a Tipper Clipper Manual ("the Manual"), which was the primary source of information that D.L. Lee & Sons received from Tipper Tie concerning the operation and maintenance of the Tipper Clippers. (Lee Aff. ¶ 6.)

The four Model Z3200 Tipper Clippers operated without incident from mid-2000 until April 8, 2005. During this period, each Tipper Clipper clipped in excess of 1½ million clips. The quality assurance department cleaned the Tipper Clippers daily. (Furtado Dep. at 13, 17.) A maintenance department employee, Mr. Emory, performed both daily and weekly inspections of the Tipper Clippers, checking the oil levels, the die, and the punch. (Emory Aff. ¶ 5.) If there was a problem with the Tipper Clippers, the

maintenance department would perform the needed repairs. During the five year period, the maintenance department replaced components such as the punch, the die, knives, cylinders, and springs, and used the diagrams in the manual to order other replacement parts as necessary. (Def.'s St. Mt. Fact ¶¶ 32-33.)

On April 8, 2005, an employee in the packing department saw metal shavings on meat product coming off the line. The problem was traced back to the Tipper Clippers. D.L. Lee & Sons purchased replacement Tipper Clippers and Tipper Tie sent representatives to the plant to investigate the problem.

The Tipper Tie representatives diagnosed the problem and found that it was caused by worn die supports. The die support is a slab of stainless steel with a machined channel that guides the clip on its way to the die. (Branch Dep. at 62.) The channel within the die support had become worn, causing the clips to be out of alignment. The misalignment caused the metal shavings that were found in the meat. Everette Branch, one of the Tipper Tie representatives, told D.L. Lee & Sons that the die supports should be replaced after every 1½ million clips. (Lee Aff. ¶ 12.) D.L. Lee & Sons states that it was never told that the die supports would need replacing, and it contends that

it had run many millions of clips through its prior machines without replacing the die supports.[3] (Lee Aff. ¶ 12.)

D.L. Lee & Sons has brought this action alleging negligent failure to warn and breach of express warranty, seeking damages caused by the malfunction of the Tipper Clippers. It contends that neither the Manual nor any other communications from Tipper Tie warned that such a serious problem could develop within the die support channel. It also alleges that Tipper Tie breached an express warranty because the Model Z3200 Tipper Clippers did not perform up to the standards of prior Tipper Clippers. Tipper Tie has moved for summary judgment on all claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is

---

[3] Using invoices from 1993 to 2000, the President of D.L. Lee & Sons, Mr. Lee, estimates that between 4.9 and 6 million clips were run through several of its prior machines. (Lee Aff. ¶ 15.)

to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d

604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-588. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

**ANALYSIS**

**I. Negligent Failure To Warn**

In Count One, D.L. Lee & Sons alleges that Tipper Tie was negligent for failing to warn that the die support would need to be replaced after 1½ million clips and that severe problems could result if it was not replaced. To establish a claim for negligent failure to warn, a plaintiff must show that the supplier of a product (1) knew or should have known that the product was likely to be dangerous for the use for which it was supplied; (2) had no

7

reason to believe that the user would recognize its dangerous condition; and (3) failed to exercise reasonable care to inform the user of the product's dangerous condition. Johnson v. Ford Motor Co., 281 Ga. App. 166, 172, 637 S.E.2d 202 (2006)(citing Restatement (Second) of Torts § 388 (1965)). A plaintiff may seek to recover for bodily injury or property damage under a failure to warn theory. Id. at 173. But a manufacturer does not have a duty to warn of an alleged defect that is "obvious" or "generally known." Fluidmaster, Inc. v. Severinsen, 238 Ga. App. 755, 756, 520 S.E.2d 253 (1999).

In its Motion for Summary Judgment, Tipper Tie contends that the problem with the die support channel was an open and obvious danger and that D.L. Lee & Sons knew or should have known that the part would wear out over time. Tipper Tie relies on Plaintiff's mandatory duty to clean and maintain the machine, warnings in the Tipper Clipper manual, and Plaintiff's past experience and common sense in operating the machines.

In response, D.L. Lee & Sons has presented evidence supporting its position that the defect in this case was neither open nor obvious. The die support channel was located on the inside of the machine and would not have been accessible during routine cleaning or maintenance.

The deterioration in the die support channel, which caused the metal shavings, was approximately 1/100 of an inch and therefore may not have been visible to the naked eye. (Paul Dep. at 71 & Ex. 2 at 26; Dub. Dep. at 71.)

At his deposition, Everette Branch, a Tipper Tie representative, admitted that it "would be logical" for the Manual to include some information about this potential problem with the die support. (Branch Dep. at 63-64.) The Manual, however, says nothing about the die support or the die support channel.[4]

The Manual states, "While cleaning the clipper, inspect for worn or damaged components needing replacement." (Doc. 19, Manual at 291, 292.) However, as explained above, the die support channel is located within the interior of the machine and may not be accessible or visible during cleaning.

Based on this evidence, the Court finds that there are genuine issues of material fact whether D.L. Lee & Sons

---

[4] The Manual provides a "General Maintenance Checklist," which includes checking oil, screws, air filter, knife, and punch, but does not include the die support. (Doc. 19, Manual at P292). There is no information stating that the die support should be inspected, no information about how to inspect the channel, and no information about the proper width of the channel. A troubleshooting guide lists potential problems but does not mention the die support. (Doc. 19, Manual at 294.) And the die support is not included on the list of Recommended Replacement Parts. (Doc. 19, Manual at 295-96.)

should have known that the die support would wear out over time and whether Tipper Tie provided sufficient warning. Tipper Tie's argument that D.L. Lee & Sons performed inadequate cleaning and preventative maintenance is also an issue of fact to be decided by the jury.[5]

Accordingly, Tipper Tie's Motion for Summary Judgment is **DENIED** on the claim for negligent failure to warn.

II. **Breach of Express Warranty**[6]

D.L. Lee & Sons alleges that Tipper Tie breached an express warranty that the new Tipper Clippers were "fully capable of meeting Lee's clipping needs and that they would work as good or better than the Tipper Clippers which Lee had purchased in the past." (Compl. ¶ 31.) It alleges that the Tipper Clippers did not perform as warranted because the new machines created metal shavings.

Tipper Tie contends that it is entitled to summary judgment because (1) the representations at the time of sale did not create an express warranty, (2) a maintenance supervisor from D.L. Lee & Sons stated that the Z3200

---

[5] Tipper Tie also suggests that the Tipper Clippers may have been damaged by improper maintenance, for example, if a screwdriver was wedged into the channel to remove a jammed clip. These contentions also raise issues of fact.

[6] In Count Two, D.L. Lee & Sons brings claims for breach of express and implied warranties. In its response to the Motion for Summary Judgment, D.L. Lee & Sons states that it is withdrawing its claims for breach of implied warranty.

10

Tipper Clippers performed "about the same" as the prior Tipper Clippers, and (3) D.L. Lee & Sons did not track the performance of Tipper Clippers and therefore has no evidence to compare the performance or the total number clips run by the machines.

Regarding whether an express warranty was created by representations at the time of sale:

> A warranty is a statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, though collateral to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises or undertakes to insure that certain facts are or shall be as he then represents them.

N. Ga. Ready Mix Concrete Co., Inc. v. L & L Const., Inc., 235 Ga. App. 68, 72, 508 S.E.2d 722 (1998)(quoting Elgin Jewelry Co. v. Estes & Dozier, 122 Ga. 807, 50 S.E. 939 (1905)).

> 'The decisive test, in determining whether language used is a mere expression of opinion or a warranty, is whether it purported to state a fact upon which it may fairly be presumed the seller expected the buyer to rely, and upon which a buyer would ordinarily rely. If the language used is of that character, the fact of reliance on the part of the buyer and the presumption of intent on the part of the seller which the law would raise in such a case would operate to create a warranty.' Smith v. Frazer, 144 Ga. 85, 88, 86 S.E. 225 (1915). 'No particular form of words is necessary to constitute a warranty . . . . [For] an affirmation at the time of sale [to constitute] a warranty, it must appear to have been so intended, and not to have

been a mere expression of opinion [and] <u>whether the words used amount to a warranty or not, is a question for the jury</u>, under the rules of law applicable to the case.' <u>Terhune v. Dever</u>, 36 Ga. 648, 652 (1867).

<u>Bell v. Menzies</u>, 110 Ga. App. 436, 438, 138 S.E.2d 731 (1964)(emphasis added). Based on this standard, the Court finds that the existence of an express warranty is an issue of fact to be decided by the jury.

As for the testimony that the new machines worked "about the same," this also does not show the absence of a genuine issue of material fact. Although the new machines worked "about the same" in many respects, it is undisputed that the new machines created metal shaving while the prior machines did not.

Finally, Tipper Tie argues that Plaintiff has no evidence to compare performance because it did not regularly track the machines. It contends that D.L. Lee & Sons purchased 15,820,000 clips that were run through the Tipper Clippers, and it argues that there is no evidence that the prior Tipper Clippers had clipped more clips. (Def.'s Br. at 20.) However, in an affidavit, William David Lee, President of D.L. Lee & Sons, relies on purchase records to estimate that the prior Tipper Clippers had clipped many more clips without incident. This is sufficient to establish a genuine issue of material fact.

12

Accordingly, the Motion for Summary Judgment is **DENIED** as to the claim for breach of express warranty.

### III. Attorney's Fees

In Count Three, D.L. Lee & Sons seeks to recover reasonable attorney's fees under O.C.G.A. § 13-6-11. This statute establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of damages. Brown v. Baker, 197 Ga. App. 466, 467, 398 S.E.2d 797 (1990). It provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13-6-11. "For the plaintiff to recover [he] need only show any one of the three conditions to exist." Brown, 197 Ga. App. at 467 (quoting Jackson v. Brinegar, Inc., 165 Ga. App. 432, 436, 301 S.E.2d 493 (1983)).

D.L. Lee & Sons states that its claim under O.C.G.A. § 13-6-11 is based on Tipper Tie's stubborn litigiousness and its having caused the unnecessary trouble and expense of bringing and maintaining this action.[7] The test for this

---

[7] "It is well settled that the 'bad faith' contemplated by this Code section is bad faith connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the

claim is whether there is a bona fide controversy between the parties. Brown, 197 Ga. App. at 468-469.

> "When bad faith is not an issue and the only asserted basis for a recovery of attorney's fees is either stubborn litigiousness or the causing of unnecessary trouble and expense, there is not 'any evidence' to support an award . . . if a bona fide controversy clearly exists between the parties. . . . Thus . . . attorney's fees are not authorized . . . if the evidence shows that 'a genuine dispute exists – whether of law or fact, on liability or amount of damages, or on any comparable issue.'"

Id. (quoting Dimambro Northend Assoc. v. Williams, 169 Ga. App. 219, 224-225, 312 S.E.2d 386 (1983)).

The evidence presented to the Court on summary judgment establishes that there is a bona fide controversy in this case. D.L. Lee & Sons has withdrawn its initial claim for breach of implied warranty, and Tipper Tie has challenged several aspects of the claims for failure to warn and breach of express warranty. For example, there are issues of fact regarding whether Tipper Tie was negligent in failing to provide a warning and whether D.L. Lee & Sons performed adequate inspection and maintenance on the machines. For these reasons, the Motion for Summary

---

claim after the cause of action has already arisen. Computer Commc'ns Specialists, Inc. v. Hall, 188 Ga. App. 545, 547, 373 S.E.2d 630 (1988)(internal quotations omitted). There is no allegation of bad faith relating to the transactions between the parties, and therefore D.L. Lee & Sons cannot recover attorney's fees because of bad faith.

14

Judgment on the claim for attorney's fees is **GRANTED** and this claim is dismissed.

**CONCLUSION**

The Motion for Summary Judgment is **DENIED** on the claims for failure to warn and breach of express warranty and **GRANTED** on the claim for attorney's fee. The claim for breach of implied warranty has been withdrawn by D.L. Lee & Sons.

SO ORDERED this 1ST day of May, 2008.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA